IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


| | | |
|---|---|---|
| SUMMIT PROCESS DESIGN INC. and BRUCE HAZELTINE, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Case No. 3:17-cv-01208 Judge Aleta A. Trauger |
| HEMLOCK SEMICONDUCTOR, L.L.C., | ) ) ) | |
| Defendant. | ) | |


## MEMORANDUM

Plaintiffs Summit Process Design Inc. and Bruce Hazeltine (referred to herein, collectively, in the singular, as "Summit") have filed suit against defendant Hemlock Semiconductor, L.L.C. ("Hemlock"), seeking to recover, as damages for the prior breach of a settlement agreement, the attorney fees incurred as a result of that breach. Now before the court is Hemlock's Motion to Dismiss. (Doc. No. 13.) For the reasons set forth herein, the court will grant the motion and dismiss this case.

## I.      Factual and Procedural Background

In June 2015, Hemlock filed suit in this court against Summit (and others), claiming misappropriation of trade secrets and seeking a preliminary and permanent injunction. *Hemlock Semiconductor, L.L.C. v. Summit Process Design Inc.*, No. 3:15-cv-00664 (M.D. Tenn.) ("Prior Litigation"). On June 24, 2015, after two weeks of intensive litigation concerning Hemlock's preliminary injunction motion, while the parties and their attorneys were gathered for depositions, counsel for Hemlock approached counsel for Summit with a

suggestion that the parties settle the matter. "After several hours of negotiations, the parties and attorneys gathered in a conference room with a court reporter and read into the record what was described as a 'Confidential Memorandum of Understanding' (the 'MOU')." (Compl. ¶ 13, Doc. No. 1.) Point Number 4 of the MOU was that "the lawsuit will be dismissed with prejudice except the injunctive language." (MOU, Doc. No. 1-2, at 5.) The parties contemplated that additional negotiations would be necessary to hammer out the precise language of the settlement agreement but agreed that they had, in principle, reached an agreement. (*See* MOU, Doc. No. 1-2, at 2 ("This is a framework of basic points that the parties have discussed and with which we believe we have agreement. There will be further negotiations over the language.").)

The next day, the parties began carrying out the terms of the MOU, beginning with notifying the court that they had reached a settlement. (Compl. ¶¶ 15–16.) Over the next several weeks, the parties worked on drafting a formal settlement agreement. In August, according to Summit, Hemlock circulated a new draft settlement instrument that included new and substantive changes. Ultimately, the parties found themselves unable to agree on the wording of the settlement and began litigating the matter again. Summit maintains that its attorneys were required to engage in substantial activities related to the original claims in the action as a result of Hemlock's failure to abide by the terms of the MOU. Summit ultimately filed a Motion to Enforce Settlement. The presiding judge[1] denied Summit's motion to stay the matter pending resolution of the Motion to Enforce Settlement, so the parties continued to litigate the underlying claims while that motion was pending.

In May 2016, the court entered an Order and Memorandum granting Summit's

---

[1] The Prior Litigation was assigned to then Chief Judge Kevin Sharp.

Motion to Enforce Settlement and dismissing the case. The court specifically held that the parties had reached a binding and enforceable settlement agreement on June 24, 2015, as memorialized by the MOU. Thereafter, both parties filed Motions to Alter or Amend Judgment, but, "pursuant to a confidential second settlement agreement," the court entered an Agreed No-Fault Permanent Injunction and Agreed Order on March 29, 2017, thus mooting the dueling Motions to Alter or Amend Judgment.

Five months later, Summit filed this lawsuit, alleging that Hemlock had breached a binding settlement agreement by continuing to litigate its claims in the Prior Litigation after the parties reached the agreement memorialized by the MOU. Summit asserts that it suffered "substantial damages as a direct and foreseeable result of Hemlock's refusal to dismiss the Prior Litigation." (Compl. ¶ 36.) Specifically, Summit claims that it incurred attorney fees from June 24, 2015 through March 29, 2017, in the amount of $121,710.46, as a result of the breach. (Compl. ¶ 37.)

Summit clarifies that it does *not* seek "recovery of damages for attorneys' fees and costs related to the drafting of Motion to Enforce Settlement, including reply and related motion to ascertain status; negotiations and party-resolution of the Motions to Alter or Amend, including the drafting of the second settlement agreement; or work that relates to the recovery of damages as a result of Hemlock's breach of the MOU." (Compl. ¶ 39.) Instead, it seeks to recover *only* those fees incurred in relation to the underlying claims in the Prior Litigation, against which Summit was forced to defend itself as a result of the breach, including the fees associated with preparing and submitting a proposed Initial Case Management Order, participating in the initial case management conference, answering Hemlock's Complaint and Amended Complaint, conducting and responding to discovery,

drafting a motion for summary judgment, and so forth. (Compl. ¶ 25.)

In lieu of answering, Hemlock filed its Motion to Dismiss, arguing that, under the so-called "American rule," each party must bear its own costs of litigation, absent an express contractual or statutory basis for recovering attorney fees, that the Complaint fails to state a viable basis for the recovery of damages that consist solely of attorney fees, and that the claim for fees is untimely under Rule 54(d) of the Federal Rules of Civil Procedure and Rule 54.01(b) of this court's Local Rules.

Summit responds that it simply seeks as compensatory damages the attorney fees that were "the normal and foreseeable result of the breach of a contract." (Doc. No. 21, at 3 (quoting *Bush v. Cathey*, 598 S.W.2d 777, 783 (Tenn. Ct. App. 1979)).) In its Reply, Hemlock generally argues that the precedent upon which Summit relies is inapposite or from jurisdictions the law of which differs from that of Tennessee. (Doc. No. 27.)

## II.     Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    Discussion

This diversity breach of contract action is governed by state law, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and there is no dispute that Tennessee's substantive law applies to this case. Under Tennessee law, "[a] settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement." *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012). To establish a claim for breach of contract under Tennessee law, the plaintiff must prove "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC–Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). In this case, the existence of a contract and breach thereof were established by the ruling on Summit's Motion to Enforce Settlement in the Prior Litigation. The only issue now is whether Summit can establish damages caused by the breach. If, as a matter of law, the damages Summit seeks are not recoverable, the case must be dismissed.

As set forth above, the only damages Summit seeks are in the form of attorney fees

incurred in pursuing the Prior Litigation after Hemlock breached the MOU. "Tennessee, like most jurisdictions, adheres to the 'American rule' for award[ing] attorney fees." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985)). Under the American rule, a party in a civil action may recover attorney fees only where: "(1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Id.* (citing *John Kohl*, 977 S.W.2d at 534).

Hemlock argues that the plaintiff has not pointed to a contractual or statutory right to recover attorney fees and that no other exception to the American rule applies to permit an award of fees in this case. Summit insists, to the contrary, that there is an exception for awarding attorney fees when such fees constitute the incidental and consequential damages flowing from the breach of a settlement agreement. It argues that it incurred fees when it was forced, as a direct result of Hemlock's breach of the MOU, to continue to litigate the underlying claims in the Prior Litigation.

Summit compares its claims to those in *John Kohl*, a case in which the plaintiffs sought to recover all attorney fees incurred in litigating a legal malpractice action as well as the fees incurred in connection with the underlying legal negligence that gave rise to the malpractice suit. The Tennessee Supreme Court distinguished among the different types of legal fees at issue in that type of case as follows:

> [T]here are three categories of attorney's fees that may constitute damages resulting from legal malpractice: (1) "initial fees" a plaintiff pays or agrees to pay an attorney for legal services that were negligently performed, (2) "corrective fees" incurred by the plaintiff for work performed to correct the

problem caused by the negligent lawyer, and (3) "litigation fees," which are legal fees paid by the plaintiff to prosecute the malpractice action against the offending lawyer.

*John Kohl*, 977 S.W.2d at 534. The Tennessee Supreme Court held that the trial and intermediate appellate courts had correctly held that the plaintiffs were entitled to recover the initial fees and the corrective fees, but the court affirmed the denial of the litigation fees based on its application of the American rule. Summit argues here that the fees it was forced to incur in pursuing the Prior Litigation after Hemlock breached the MOU are akin to the corrective fees that were held to be recoverable in *John Kohl*.

Likewise, Summit points to *Morrow v. Jones*, 165 S.W.3d 254 (Tenn. Ct. App. 2004), an action for breach of a contract for the sale of real estate in which the defendant also brought counterclaims for breach of contract, specifically a rental agreement. The court entered judgment for the defendant on her breach of contract claim and awarded consequential damages, which included attorney fees associated with late payments on her mortgage, incurred as a result of the plaintiffs'/counterdefendants' failure to make timely rent payments. The court found that, "under the circumstances, [the defendant's] inability to pay the mortgage in a timely fashion was a foreseeable consequence of the [plaintiffs'] failure to pay rent. Thus, the trial court properly awarded the late fees, reinstatement fees, and attorney's fees as consequential damages . . . ." *Id.* at 259–60. Summit argues that *Morrow* supports the proposition that an award of attorney fees as a component of consequential damages is authorized by Tennessee law.

As a matter of logic and public policy, Summit's argument is not without appeal. The Tennessee courts, however, do not appear to have embraced it. In *Grace v. Grace*, No. W2016-00650-COA-R3-CV, 2016 WL 6958887 (Tenn. Ct. App. Nov. 29, 2016), the

plaintiff in a breach of contract action filed a motion to enforce a settlement agreement reached with the defendant and also sought, as part of the direct and consequential damages caused by the breach, those attorney fees incurred after the defendant breached the settlement agreement. He specifically sought only those fees "incurred . . . after [the defendant] allegedly refused to sign the agreed order concerning the settlement agreement." *Id.* at *2. Neither the plaintiff nor the trial court expressly distinguished between those fees associated strictly with the enforcement of the settlement agreement and those associated with litigating the underlying claims. The court did note, however, that the defendant sought, and was granted, leave to amend her answer and counter-complaint and to complete additional discovery after the plaintiff filed the motion to enforce the settlement agreement, so presumably at least some of the fees sought were incurred in connection with the plaintiff's being required to answer the amended counter-complaint and participate in discovery as a result of the defendant's breach of the settlement agreement.

The trial court ultimately granted the motion to enforce the settlement but denied the request for attorney fees based on its application of the American rule. On appeal, the plaintiff argued that an exception to the American rule permitted the recovery of attorney fees that are the "incidental and consequential damages incident to [the defendant's] breach of the parties' settlement agreement." *Id.* at *6. The plaintiff relied on *Edwards Moving & Rigging, Inc. v. Lack*, No. 2:14-cv-02100-JPM-tmp, 2015 WL 3891953 (W.D. Tenn. June 24, 2015), which held, based on Tennessee law, that "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action." *Id.* at *8

(quoting *Engstrom v. Mayfield*, 195 F. App'x 444, 451 (6th Cir. 2006), and citing *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn. 1985)).

In responding to that argument, the *Grace* court noted, first, that it was not bound to follow a federal court's interpretation of state law. *Grace*, 2016 WL 6958887, at *6. But it also distinguished *Edwards Moving* on the basis that the plaintiff there pursued a tort claim—tortious interference with contract—under which the plaintiff was able to claim as damages the attorney fees it had incurred in its suit against a third party to enforce the contract the breach of which was caused by the defendant's tortious interference. As the *Grace* court stated:

> In our view, it was the tort action, rather than the contract enforcement action, that laid the foundation for the attorney's fee award. Indeed, the Tennessee case cited by the *Edwards Moving* court in support of its ruling . . . specifically held that the attorney's fees award could be recovered in that case "under an independent tort theory."

*Id.* at *7 (quoting *Pullman*, 693 S.W.2d at 340); *see also Pullman*, 693 S.W.2d at 340 ("It appears to be well settled that where the natural and proximate consequence of a tortious act of defendant has been to involve plaintiff in litigation with a third person, reasonable compensation for attorneys' fees incurred by plaintiff in such action may be recovered as damages against the author of the tortious act.").[2]

In *Grace*, however, *Pullman*'s "independent tort exception" did not apply, both because the case did not involve a tort claim and because the case only involved claims between the plaintiff and the defendant, as a result of which the plaintiff "was not required to

---

[2] The *Pullman* court also recognized another exception to the American rule, holding that an implied indemnity agreement could furnish a basis for an award of attorney fees. *See id.* at 338 ("We . . . hold that the right of indemnity which arises by operation of law, based upon the relationship of the parties, includes the right to recover attorneys' fees and other litigation costs which have been incurred by the indemnitee in litigation with a third party.").

bring suit against a third party to protect his interests." *Id.* Because the plaintiff invoked no other possible exception to the America rule, the court upheld the denial of attorney fees in that case. The court also addressed virtually all of the Tennessee cases upon which Summit relies, including *Morrow* and *Bruce v. Olive*, No. 03A01-9509-CV-00310, 1996 WL 93580 (Tenn. Ct. App. March 4, 1996), distinguishing them on the facts or on the basis that they included no analysis of the attorney fee award. *See, e.g.*, *Grace*, 2016 WL 6958887, at *7 (describing *Morrow* as "addressing an argument that another portion of the consequential damage award was erroneous, but simply stating without discussion that the attorney's fees were proper consequential damages for the breach of contract").[3]

Summit argues that *Grace* is inapposite because it did not expressly address the plaintiff's argument—that is, it did not expressly distinguish between those fees incurred in enforcing the settlement agreement and those fees incurred in pursuing the underlying litigation *because of* the breach of the settlement agreement. Summit also argues that *Grace*, as an unreported case, is of limited persuasive value and that the court should rely, instead, on cases from other jurisdictions, particularly Ohio and Texas, which specifically countenance the recovery of attorney fees incurred as the result of a party's breach of an enforceable settlement agreement. *See, e.g.*, *Rohrer Corp. v. Dane Elec. Corp.*, 482 F. App'x 113 (6th Cir. 2012) ("Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement makes litigation necessary, even where none of the exceptions to the American Rule have been shown."); *Tejada-Hercules v. State Auto. Ins. Co.*, No. 08AP-150, 2008 WL 4416534 (Ohio Ct. App. Sept. 30, 2008) ("When a party

---

[3] In *Morrow*, the defendant was allowed to recover as damages the amount of attorney fees she had paid to a third party as a result of the plaintiff's breach of a rental agreement, which rendered the defendant unable to pay her mortgage. Thus, the situation is more closely analogous to *Pullman* than to *Grace* or this case.

breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim."); *Vianet Group PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 WL 4368302, at *7 (N.D. Tex. Aug. 16, 2016) (noting that Texas law "distinguishes between [1] recovery of attorney's fees as actual damages and [2] recovery of attorney's fees incident to recovery of other actual damages," and permits them in the former but not the latter, to which the American rule applies instead (citations omitted)); *Guffey v. Clark*, No. 05-93-00849-CV, 1997 WL 142750, at *3 (Tex. Ct. App. Mar. 31, 1997) ("Therefore, if the attorneys' fees and costs Clark and Harris incurred in the Mississippi litigation and the injunction action were the natural, probable, and foreseeable consequence of Guffey's breach of the settlement agreement, those fees and costs can properly be recovered as damages.").

As *Hemlock* points out, however, "[w]here no on-point precedent from the Tennessee Supreme Court is available, [the federal courts applying Tennessee law] must consider any available precedent from the state appellate courts, whether published or unpublished." *Lukas v. McPeak*, 730 F.3d 635, 638 (6th Cir. 2013). That is, any intermediate appellate opinion is "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)). There is no Tennessee Supreme Court opinion precisely on point and no other Tennessee appellate case more closely on point than *Grace*. That opinion, regardless of whether it is published, constitutes stronger evidence of how the Tennessee Supreme Court would rule than opinions from Texas and Ohio.

Moreover, other jurisdictions presented with the precise issue have expressly held, based on the American rule, that attorney fees incurred in litigating a case after the breach of a settlement agreement are not recoverable. For example, in *Reigel v. Whelan*, No. 04-C-365, 2006 WL 51149, at *1 (E.D. Wis. Jan. 10, 2006), the district court was squarely confronted with the question of "whether, under Wisconsin law, attorney's fees are properly awarded as damages stemming from breach of a release in which one party agrees not to sue the other." The court noted the absence of Wisconsin case law precisely on point "as well as the tension between the notion that attorney's fees are the sensible and predictable 'damages' when a release is breached and the American Rule holding that attorney's fees are to be borne by both sides of a dispute." *Id.* The court was clearly troubled by this tension but ultimately denied attorney fees:

> [W]hen a party agrees not to sue another, and then does, the damages from a breach of that agreement would seem to include the costs of defending the wrongfully brought lawsuit, including attorney's fees. [H]owever, . . . there seem[s] to be a majority view that attorney's fees are not properly awarded in this circumstance absent a specific contractual provision to the contrary. The reasoning behind this rests squarely on the American Rule that a party must bear its own expenses in litigation.
>
> Whatever the merits of the opposing viewpoints, I am persuaded that Wisconsin courts would not award attorney's fees in a case like this. . . .
>
> [P]arties to a release are aware of the potential costs of litigation and can easily contract to provide attorney's fees if they so desire. Absent such a provision, and without clear Wisconsin authority to do so, I conclude that the proper approach here is to decline to award fees.

*Id.* (citing *In re Weinschneider*, 395 F.3d 401, 404 (7th Cir. 2005); *Child v. Lincoln Enters., Inc.*, 200 N.E.2d 751, 754 (Ill. App. Ct. 1964); and *Navellier v. Sletten*, 131 Cal. Rptr. 2d 201, 211 (Cal. Ct. App. 2003)). *Accord Bunnett v. Smallwood*, 793 P.2d 157, 161 (Colo. 1990) ("[P]arties who enter into a release are aware of the potential legal costs if the agreement is breached. It is not unfair to require each party to pay its own legal costs if the

parties did not find it necessary to include a fee shifting provision when they entered into the agreement."); *Schumate v. Lycan*, 675 N.E.2d 749, 753–54 (Ind. Ct. App. 1997) (reaching the same conclusion under Indiana law, citing *Bunnett*).

The Tennessee Supreme Court has recognized that the American rule is "firmly established" in the state. *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008). The public policy considerations underlying the rule include:

> First, since litigation is inherently uncertain, a party should not be penalized for merely bringing or defending a lawsuit. Second, the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included paying the fees of their opponent's lawyer. Third, requiring each party to be responsible for their own legal fees promotes settlement. Fourth, the time, expense, and difficulty inherent in litigating the appropriate amount of attorney's fees to award would add another layer to the litigation and burden the courts and the parties with ancillary proceedings. Thus, as a general principle, the American rule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case.

*Id.* (citations omitted). Summit insists that the third consideration is actually thwarted by not allowing attorney fees in the situation presented here: litigants are free to flout settlement agreements without penalty, since the only damages associated with the breach of a settlement agreement are the attorney fees associated with continuing to litigate a case that has been settled.

While the court finds that argument persuasive, Summit has not pointed to any Tennessee case creating an exception to the general rule for this type of situation. And those Tennessee decisions addressing claims for attorney fees—from the Tennessee Supreme Court as well as both published and unpublished decisions from the Tennessee Court of Appeals— strongly suggest that the Tennessee Supreme Court, if confronted with the question, would apply the American rule strictly, awarding attorney fees to an adversary only where they are

permitted by statute or contract or where "some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Summit is essentially asking this court to create a new exception to the American rule, one not previously recognized by the Tennessee courts. The court declines that invitation.

In sum, the only damages sought are attorney fees, but Tennessee law does not authorize recovery of attorney fees as damages under the circumstances presented here. Damages are an essential element of any contract case governed by Tennessee law. *See Kindred v. Nat'l Coll. of Bus. & Tech., Inc.*, No. W2014-00413-COA-R3CV, 2015 WL 1296076, at *4 (Tenn. Ct. App. Mar. 19, 2015) (dismissing contract claim where the damages sought were too speculative). Summit, as a matter of law, cannot prevail on its breach of contract claim.

## V.    Conclusion

For the reasons forth herein, the court will grant the defendant's motion and dismiss this case with prejudice. An appropriate Order is filed herewith.

ENTER this 21st day of December 2017.

_____
ALETA A. TRAUGER
United States District Judge